IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

KEVIN JOHNSON

         Plaintiff,

v.                                   Civil Action No. TMD 10-03581

CAROLYN W. COLVIN,
Commissioner of Social Security,

         Defendant.

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Kevin Johnson ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.§§ 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 19) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 21). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed his application for SSI on April 5, 2007 alleging disability since February 1, 2003 (subsequently amended to April 5, 2007) on the basis of systemic pain pain and an inability to stand for long periods of time. R. at 11, 72-78, 83. His claim was denied initially and on reconsideration. R. at 36-38, 46-47. On September 25, 2009, a hearing was held

before an administrative law judge ("ALJ"). R. at 20-33. In a decision dated November 16, 2009, the ALJ denied Plaintiff's request for benefits. R. at 11-19. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-5.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since April 5, 2007. At step two, the ALJ determined that Claimant suffered from the following severe impairments: osteoarthritis of the hips; worse on the left; and depression. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that, given his Residual Functional Capacity ("RFC"), Plaintiff was not capable of performing his past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 11-19.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*

*v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

IV. Discussion

Plaintiff argues that the ALJ erred in (1) analyzing his mental impairments; (2) his assessment of his RFC; and (3) his reliance upon the VE testimony.

A.      Mental Impairment

After a lengthy recitation of the regulations governing the evaluation of a mental impairment, Plaintiff makes a boilerplate argument that the ALJ failed to follow the special technique laid out in the regulations and asserts without a single citation to a fact in the record that it is "undisputed that the Plaintiff has a documented mental impairment, which impacts his ability to work." Pl.'s Mot. Summ., ECF No. 19 at 6. To the contrary, the Court finds that the ALJ did not err in his analysis of Plaintiff's mental impairment and that his findings regarding his depression are supported by substantial evidence.

When evaluating the severity of mental impairments, the ALJ must follow a special technique which begins with a determination of whether or not claimant has a medically

3

determinable mental impairment.  20 C.F.R. §416.920a(a). He then must rate the degree of

functional limitation in the following four broad functional areas: activities of daily living,

social functioning, concentration, persistence or pace and episodes of decompensation.  20

C.F.R. §416.920a(c)(3). After rating these areas, the ALJ determines the severity of the mental

impairment, and if severe, the ALJ will assess whether it meets a listing and if not, proceeds to

the RFC analysis.  20 C.F.R. §416.920a(c)(4). Here, the ALJ found Claimant's depression was a

medically determinable mental impairment that was severe.  He then found that Claimant

suffered from only mild restrictions in activities of daily living, moderate difficulties in

maintaining social functioning, moderate difficulties in maintaining concentration, persistence

or pace and no episodes of decompensation.  R. at 13.  The ALJ determined that Claimant's

mental condition did not satisfy any Listing.  R. at 14.

     The ALJ reviewed the consultative psychiatric evaluation completed by Dr. Hussain in

November, 2007 in which Dr. Hussain opined Claimant was unable to complete tasks or

tolerate work-related stress and demands and assigned him a Global Assessment of Functioning

of 45.  The ALJ assigned these opinions little weight finding that they were based on a one-time

examination and almost entirely based on Claimant's self-reporting.  R. at 16.  The ALJ noted

that Claimant did not allege any mental health impairment at the hearing but instead testified

that it was his hip that was his "biggest problem." R. at 28.  Significantly, the ALJ noted that

the record did not contain any evidence that Claimant was ever treated by a mental health

professional.  R. at 16.  In formulating his RFC, the ALJ, as a precautionary measure, limited

Claimant's contact with the public based on possible moderate limitations in social functioning.

R. at 17.  Despite Plaintiff's conclusory assertions, there is simply no basis to find that the ALJ erred in his assessment of his mental impairment.

B.    RFC

Plaintiff next argues that the ALJ erroneously assessed his RFC by failing to evaluate pertinent evidence.  He argues that the ALJ failed to evaluate evidence from the state agency physicians "in any manner." To the contrary, the ALJ specifically referenced those findings and found that Claimant's activities of daily living did not support the "moderate" degree of limitation found therein.  He also noted that there was no evidence of episodes of decompensation and gave Claimant the benefit of the doubt in affording Claimant a moderate limitation in social functioning.  R. at 17.  Plaintiff points to the findings in which the agency physicians checked off various "moderate" limitations but does not assert how those findings would, in any way, change the ALJ's RFC.  In fact, the ALJ specifically stated that the moderate limitations which were supported by the record were consistent with his limitation that Plaintiff could perform only unskilled work.  R. at 17.  *See Bowers v. Commissioner, Soc. Sec. Admin.*, Civil No. SAG–11–1445 2013 WL 150023 at * (D. Md. Jan. 11, 2013) *citing Bell v. Astrue*, 8:07-cv-00924-JKS, slip op. at *9 (D. Md. Mar. 12, 2008) ("a finding of moderate impairment in a particular broad functioning area does not automatically indicate that a claimant's condition will significantly impact his or her ability to perform work-related functions").  Moreover, as this Court has previously noted, an ALJ is not required to mention each of the "summary conclusions" in Part 1 of the MRFC form. *See, e.g. White v. Commissioner, Soc. Sec. Admin*., No SAG-11-3769, 2013 WL 105202 at *1 (D. Md. Jan. 7,

2013) ("the relevant portion of Dr. Edmunds's opinion is not Section I, which sets forth a series of "check the box" rankings, but Section III, which provides a detailed narrative functional capacity assessment. *See* Program Operations Manual System DI 24510.060B (Mental Residual Functional Capacity Assessment). Because Section I does not include the requisite level of detail to inform the ALJ's opinion, an ALJ need not address each of the Section I limitations, and the ALJ need not include each of those limitations in the hypothetical to the VE."); *see also Andrews v. Astrue,* Civil No. SKG–09–3061, slip op. at \*39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so.").1

Plaintiff next argues the ALJ failed to properly evaluate the opinion of nurse practitioner, Ms. Deborah Foerter, C.R.N.P. He argues that the ALJ's notation that she was not an "acceptable medical source" was erroneous. Plaintiff cites to SSR 06-03p in support of his argument, but that regulation indeed dictates that Ms. Foerter's opinion is not an "acceptable medical source" but rather should be treated as an "other source." Thus, the ALJ's notation was entirely proper; and, as the ruling points out, her opinion cannot establish the existence of a medically determinable impairment. *See Mason v. Astrue*, JKS-10-2157, 2013 WL 990399, at \*3 (D. Md. Mar. 12, 2013) ("Ms. Cira is not an "acceptable medical source"; rather, therapists

---

1 To the extent Plaintiff contends the ALJ did not include restrictions in the RFC reflective of his finding that Claimant experienced moderate limitations in terms of concentration, persistence or pace, the Court disagrees. In these circumstances, the ALJ's limitation to unskilled work is sufficient to account for those limitations. *See, e.g., Bowers v. Commissionerr, Soc. Sec. Admin.,* CIV. SAG–11–1445, 2013 WL 150023, at \*2 (D. Md. Jan.11, 2013) ("The finding of a moderate impairment in concentration, persistence, and pace does not indicate that restrictions other than a limitation to simple, unskilled work would be necessary."); *Taylor v. Astrue,* CIV.A. BPG–11–0032, 2012 WL 294532, at \*2 (D. Md. Jan.31, 2012) (finding that a limitation to unskilled work was sufficient to

are "other sources," as defined in 20 C.F.R. 404.1513(d), and an ALJ, when analyzing opinions of such sources, *may,* but is not required to, use the factors set out in 20 C.F.R. 404.1527(d)). Moreover, the Court does not find that the ALJ erred in his decision to provide her opinions limited evidentiary weight. R. at 16. He noted that her treatment was relatively infrequent and conservative (primarily medication management) and did not support her opinion that Claimant was unable to sit, stand and/or walk for a total of eight hours a day, among other limitations. R. at 137-40, 213-16, 237-40. *See* Mason, 2013 WL 990399, at *3 (finding no error when ALJ "assigned little weight to [opinion of therapist because it] was 'inconsistent with [Claimant's] relatively conservative mental health treatment history.'"). This finding is supported by substantial evidence. Claimant's treatment consisted primarily of four appointments from March, 2007 through August, 2007, R. at 168-71, and that after those appointments, Claimant did not see Ms. Foerter for approximately two years, R. at 16, 231-32, and the record is devoid of active treatment from August 2007 through June, 2009. R. at 16. In addition, Ms. Foerter noted Percocet helped with the pain, R. at 168. Finally, Plaintiff claims that the ALJ erred because he failed to consider various findings by Ms. Foerter including diminished strength, an abnormal gait, and the need for a cane. R. at 168, 171, 214, 216. While the ALJ did not explicitly discuss these findings, the Court still finds that the RFC is supported by substantial evidence and that these findings do not even support the extreme level of limitations expressed by Ms. Foerter. *See also* R. at 223 (report of Dr. Nayfey indicating Claimant had full motor strength); R. at 15-16, 151 (report of consultative examiner finding 5/5 grip strength on the left

accommodate mild-to-moderate limitations stemming from a mental impairment).

and 4/5 on the right, ability to extend hand fully, make a fist and oppose his fingers). In addition, Plaintiff does not point to any evidence which supports a medical requirement that he use a cane.

C. <u>VE Testimony</u>

Plaintiff contends that the ALJ erroneously relied upon the testimony of the VE because he contends that the hypothetical failed to address all of Plaintiff's limitations. Based on the discussion above, the Court finds that the limitations found by the ALJ supported by substantial evidence and that those limitations were accurately reflected in the hypothetical to the VE and properly incorporated in the RFC.

V. <u>Conclusion</u>

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: December 11, 2013                    _____/s/_____
                                           THOMAS M. DIGIROLAMO
                                           United States Magistrate Judge